Our first case today is 4-14-0682. In re. Marriage of Nancy and David Benson. Attorney Leo Quigg Jr. is here on behalf of the appellant. And for the affilee, we have Kurt Vickis. Okay. Mr. Quigg, you may proceed. Good morning. Good morning. May it please the court. Council. Council. I'm Leo Quigg, from Decatur, and I'm here on behalf of the appellant, David Benson. This case, of course, arises from a dissolution of marriage proceeding from the Circuit Court of Manking County. Specifically, the determination to be made is the division of Mr. Benson's firefighter's disability benefits, or whether the disability benefits are the same or tantamount to retirement benefits. This general issue has been before several courts in the state of Illinois. We think this case is somewhat different than the other cases that have been before the appellate courts in the state of Illinois. To begin, what should be clear is that disability benefits are not, as a matter of law, retirement benefits. The Illinois Pension Code disability benefits are not tied to length of service or longevity in any fashion. Disability benefits are not electable, nor are they triggered by any event other than physical or mental impairment by the firefighter. We know that retirement benefits are taxable. Disability benefits are not. And it would seem that the legislative intent should be clear that the legislative intent is to protect the firefighters and to recognize and reward them also for their service. So to blur the lines between disability and retirement benefits creates confusion, and it also defeats the protection for firefighters that the General Assembly intended. In fact, a firefighter who is injured or disabled is actually entitled to a host of benefits under many statutes. And we believe that the blurring of those lines between disability benefits and retirement benefits is exactly what happened in this case. In 1999, Judge Hendrian, the then-trial judge, ruled, in part, that plaintiff is granted a one-half interest in defendants' retirement plan through the Decatur Fire Department. In 2014, the then-trial court expressed his opinion that the case law was clear that Mrs. Benson was entitled to a portion of Dave Benson's disability benefits. The court stated that he was of the opinion that it was clear from the case law that she was entitled to a fractional interest in his disability benefits. He concluded that the benefits are in the nature of a disability pension, and he awarded her 37.6%. The trial judge further indicated that it didn't matter whether or not he had voluntarily agreed to take the disability benefits or whether he had just received them. Q. Mr. Quigg, was that Judge Coryell? A. Yes, Your Honor. Q. And when he referenced case law, did he specify which cases he was depending on? A. There were four cases proposed to him, or suggested to him, and I think the four cases that he relied upon when he was saying that the case law was clear, I believe he relied on four cases that was cited to him in Mrs. Benson's memorandum. Those cases were the Schertz case coming out of the Third District, I think I'm pronouncing that correctly, the Marshall case, which was a case coming out of this court quite some time ago, and Smith and Sawicki, both cases coming out of the Third District. So when the judge said that he believed that the case law was clear, I believe he was relying on those four cases. Q. And then just taking the Schertz case, because I believe Mr. Benkus, he cites to that heavily in his brief, also the Marshall case, but in Schertz, there you had a firefighter, somewhat similar situation, instead of a dissolution judgment, there was a settlement agreement, and in that settlement agreement it referenced retirement benefits. Here the reference in the judgment is to retirement plan, and then the plan itself includes disability benefits. Is that true? A. I don't know that I necessarily agree with that. Q. Or maybe more accurately, in the description of the retirement plan, reference is made to disability benefits. A. Well, firefighters have a whole host, they have disability benefits, they have a retirement plan, and I guess I wouldn't concede that disability benefits is a different statute, and I guess I would not concede that it's necessarily part of their retirement plan. Again, those are different animals. Q. And I understand you're distinguishing between the two, but just in terms of the document that your client was provided describing his benefits under the retirement plan, disability benefits are described. Is that right? A. I would think that to be the case. But back to the four cases that we were talking about. Those cases, as you point out, like the Schertz case, involved the interpretation of a marital settlement agreement. So of those four cases, the common thread or theme among all four of those cases is, one, they were interpreting or analyzing a marital settlement agreement, or, secondly, the firefighter was already starting to receive the disability benefits or the benefits were already accrued or accruing. That is clearly not the case that we have here. There was no marital settlement agreement, nor was there any disability at the time of the dissolution of marriage. At the time the dissolution was entered, Mr. Benson was still employed as a firefighter and was actively engaged and employed as a firefighter. And I will also just point out that there are other cases, in particular the Davis and the Belk cases, involving a marital settlement agreement where they reached a contrary result. And in particular, in Davis, the marital settlement agreement provided that Peggy Davis was to be paid benefits from the Teamsters Pension Fund when William Davis receives benefits from the said plan regardless of the form or the frequency of said payments. But the court concluded that as no reference was made specifically to the disability benefits in the marital settlement agreement, the court concluded that the spouse was not entitled to the benefits. Again, I think this is the critical point in that in 1999, the judgment was entered following a very contested trial. There was no marital settlement agreement to interpret. Mr. Benson was not disabled at the time or receiving disability. And as we noted, the court only ordered one half of Mr. Benson's retirement plan. There is no indication in the record that the parties contemplated, discussed, nor did the trial judge, and I'm sure nobody even thought about the possibility of future benefits that might arise for Mr. Benson as a firefighter. So I think we do know that judgments generally have to be construed strictly. I think the judgment has to be given its plain, ordinary, and unambiguous meaning. And so when the trial judge in 1999 talked about retirement, I would suggest to you that's exactly what he meant. He meant retirement. He didn't know anything about disability benefits. And I don't even think they were contemplated. Let's suppose you represent a judge in Macon County who gets a divorce. And the references in the order are to pension benefits. And then that judge becomes disabled, either because of mental illness or physical incapacity, and begins to draw those benefits before he or she would have ordinarily retired and received money from the Judicial Pension Fund. What would the result be? Well, and throw in the judge also has a deferred compensation plan, which is meant to supplement a pension. But it's not a pension. Well, I guess I'd have to examine exactly what the statute says. But is the question that there was a disability... Well, Judge, there is a provision in judicial retirement that if you're unable to perform your duties, but you haven't voluntarily retired, that you receive benefits from the state of Illinois. That's not exactly a pension. And you pay into a deferred compensation plan that's not a pension. It's not referred to as a pension, but you can only begin to draw from it when you retire. Yet the word pension, it's not a pension benefit at all. It's a benefit that you and your spouse have voluntarily paid into. We can assume that it would be listed as a marital asset, and the judge would do something with it. But in a contested case, the judge might just throw up his hands and say, you get half the pension, you get half of whatever. Well, I guess my inclination would be to say I'd want to read the judgment very closely and see what the judge says. But again, if the judge just talks about retirement and doesn't make reference to any other benefits, I guess my inclination would be to say that we just follow what the judge says. I think maybe what Justice Connick is getting at is is there a difference if somebody starts to draw it before they could have retired or would have retired, for example. So in other words, in your case, your client is of the age where he could draw a retirement benefit as opposed to the disability benefit. Don't the cases say if you're under that age, once you reach the age of retirement, then you start to pay the divorced spouse? Well, I don't know that the... I don't know that the person is obligated to start... If that's the question, if they're obligated to start switching over to retirement, in this case, a firefighter's pension, you know, they can kick you off the disability and turn you over to retirement. So I'm not sure... Isn't that up to your client to elect one or the other? At this point, he could elect? At this point, he could, yes. And why in the world would he ever elect a retirement benefit when his disability benefit is tax-free? Well, and that's a good point. I mean, if he has an opportunity to get tax-free benefits, then yeah, I can understand the logic of why he would choose to do that. Right. So then the power to defeat her right to a portion of the pension that was earned during the marriage is all with him. According to you, he gets to control that. Well... Because he could choose a retirement benefit. But why would he? He'd have to pay income tax on it. That's correct. And he would have to share it for sure with her. And that's true. But on the other hand, he's just being a... he's just taking advantage of what the General Assembly has provided him, I would say. At the time Judge Correale entered his judgment, he divided the marital assets and one of the marital assets was your client's retirement benefits. His retirement, correct? Judge Correale or Judge Hendrian? I'm sorry, Judge Hendrian. Yes. Exactly. And what has happened currently to that marital asset? Is it just gone, according to your theory here? No, it's still there. It's still there. And if it's never tapped, are we to say that it has disappeared, that there is a marital asset that is gone? I suppose you could say that, yeah. Now, he just now is of... you know, he's 65 at the time that Judge Correale entered his order, okay? So now he's approaching regular retirement age. What's the retirement age for a firefighter? Well, he could have retired earlier. He could have chosen to retire earlier. 50s, isn't it? 50, I believe, if you have so many years of service. Right. Which he had. He had. But again, according to the record, and the record is a little scant on this, to be honest, the testimony was that he testified that he didn't even really consider it. Consider what? Either retirement or disability. According to the record, he testified, well, I got hurt and they put me on disability. And I think he... the record, I think, indicates that it wasn't a conscious decision on his part to either elect disability or retirement. He just said, I got injured and they put me on disability. So I don't know that there was any conscious... I mean, I know that the inclinations say, well, gee whiz, he cheated her or he somehow... I don't think anybody thinks he cheated her. But when you look at it objectively, any person in his position, rationally, would elect to receive disability. Because for the very reason it's tax free. So the only issue to us is under the order that Judge Hendrian entered, is his ex-wife entitled to a share of this payment under the retirement plan? That's the only question. I don't think there's any... anything on our part to say he's cheating her in any way. Well, I guess to reach... well, I understand the point the court is making there. And to reach the conclusion that was reached by Judge Coryell, I think one of two things has to happen. I mean, one, you have to say that when the plaintiff was granted a one-half interest in the defendant's retirement plan back in 1999, Judge Hendrian either meant or meant to say or meant to include any other benefits that would be available to Mr. Benson in the future. For example, I mean, let's just say instead of disability benefits, he was working something else and received a worker's comp claim or he was on social security disability. Surely, Judge Hendrian's ruling would not go out and snag back a worker's comp claim or a social security disability claim that arises in the future. Well, the worker's comp claim that arises in the future isn't marital property, but the portion of the pension that was earned during the marriage is marital property. The retirement is, yes. But I'm distinguishing retirement from disability. We understand that. The issue is whether the retirement plan included disability benefits. And according to Judge Correal, they did. And the question also is whether what did Judge Hendrian order? You know, what was he contemplating when we're talking about something that hasn't even happened yet? And again, we are distinguishing this type of case from the other types of cases that have been before the court before. Mr. Quigg, I'm sorry, you're out of time, but you're going to have more time on rebuttal. Okay. Thank you. You're welcome. Mr. Bickus? May it please the court, counsel. My name is Kurt Bickus. I'm here on behalf of the appellee, Nancy Benson. Paragraph 9 of this 1999 judgment of dissolution awarded my client a one-half interest in the defendant's retirement plan through the Decatur Fire Department. Now, on its face, paragraph 9 of this judgment is admittedly silent on the issue of disability benefits. It doesn't use the word disability. But on the other hand, my client was awarded a one-half interest in the defendant's retirement plan. What's the retirement plan? The retirement plan necessarily refers to the defendant's interest in the Decatur Fireman's Pension Fund, founded Article IV of the Pension Code. So, he had no other plan. The retirement plan has to be his interest in the pension fund. And as the court knows, this pension fund offers an assortment of benefits to firefighters including both retirement benefits and disability benefits. There's a whole assortment. It also includes survivor's benefits. A conversion option from disability to retirement. So, it's our position that because disability benefits are a component of the defendant's retirement fund that Judge Hendrian intended to award my client a one-half interest in those benefits as well as any retirement benefits. From an accounting perspective, do the dollars come from the same place? I.e., the payment of disability versus the payment of a pension benefit? They both come from the fund. Into which the city or the municipality and or, I don't know how their, does the individual firefighter make a contribution? Yes. Towards the end of the statute it talks about the contributions that the firefighters have to make. So, when we look at this it makes sense that back in 1999 Judge Hendrian intended to include disability benefits. This plan, this fund was, in fact, the most valuable financial asset the parties had and it doesn't make sense to us that Judge Hendrian would be stingy on that or try to as an analogy if you had a divorce case where the court awarded the wife half interest in the husband's copyright, for example. If you look at what a copyright is under the Copyright Act it's a bundle of six exclusive rights that an author has. If a court awards an interest in a copyright it wouldn't make sense to interpret that to mean well, there's maybe one or two of the exclusive rights that were awarded to the wife, not the entire bundle. And the pension fund consists of this bundle of rights and benefits and when the court awarded her one half of the interest in that fund our position is that disability benefits were included. It also makes sense given the fact that this plan contained a disability component and the defendant was a firefighter it's reasonable to conclude that the judge designed some protection for the wife in the event that the husband was injured. Also, in terms of the trial court's intent, awarding plaintiff retirement benefits only without disability benefits would have allowed a situation just like this to occur in the event that there was an injury. We don't think the court would have intended this result we have today. How about death? My understanding is that when there's death that the pension benefits end and unless the court... Well, there's a settlement agreement, it just says pension plan, the firefighter dies before retirement. I don't believe, Justice, there's a death benefit as part of the bundle of rights that compose the fund. So, to answer your question, I think in that case, my client would receive nothing. But, just to highlight, put an exclamation point on why this court should affirm Judge Corio, let's say for the sake of argument that paragraph 9 is ambiguous because it can be interpreted one of two ways. One reasonable interpretation is that because it did not contain the word disability, that my client only had retirement benefits and nothing else. Let's say that's the case, and paragraph 9 is ambiguous. The Schertz case tells us how we should handle that. First, the Schertz case says you need to look at the facts and not the  If the defendant was eligible for maximum retirement benefits, the next fact or circumstance to be considered is this. What did the defendant do when he was hurt? He elected, he decided, he chose to apply for disability benefits. And he chose to apply for disability benefits in lieu of receiving the maximum retirement benefits. Doesn't that make sense, logical sense under the circumstances? Yes, but the salient fact is that he chose, this wasn't something that just happened to him. He had to decide he wanted disability benefits, he had to apply for them under 4-112, he had to submit himself to three independent medical examinations, he had to go to the hearing, he had to do everything that was required of the disability board to get his disability benefits. I believe that's a salient fact because counsel argues it just happened to him. I don't believe that's true. Mr. Pickus, what if your client was 45, not eligible to retire, became disabled, and drew disability benefits? Would his ex-wife have been entitled to a portion of that before he hit retirement age? No. If you assume that paragraph 9 is ambiguous, you look to shirts, shirts and the Marshall case from this court, the Davis case and the Belt case contain this common threat, this common approach. And the approach is that if you become disabled and you're not yet eligible to retire, the court should interpret a provision like ours as not granting the ex-wife a share of the disability benefits. And the reason for that, Justice Pope, is that in that situation, disability pay is meant to replace the disabled ex-husband's income and not replace the retirement. If you're younger and you haven't retired and you take disability and the court awards the ex-wife a share of it, what is happening is the ex-wife is receiving a benefit she would not otherwise be entitled to while you're taking the disabled spouse's income and cutting it in half. The flip side, though, is, and this is part of the common threat, if you're injured at a time when you're eligible to retire and you choose to take disability in lieu of your retirement benefits, then the ex-wife should be awarded an interest in those disability benefits. Because in that case, if you don't do that, the injured spouse gets the windfall. And the ex-spouse is not given the benefit she was otherwise entitled to pursuant to the judgment. So it does depend on if you're eligible for retirement at the time of the injury and the disability or you're not. And all that makes sense. In the first case, if there was a young worker and he's disabled, if you take away his benefits, the ex-wife gets the windfall. And the other way, if the disabled worker is eligible to retire, you award the ex-spouse a share of the disability benefits as she's deprived and you allow the injured employee to defeat her claim, which is what happened here. Schertz and Marshall cover the situation where the injured employee is disabled and he's eligible to retire. Belk and Davis cover the situation where the injured employee chooses to take disability benefits. Mr. Quigg indicated in his brief that Judge Hendrian ordered any transfer of  benefits be made via Quadro. And he points out that disability benefits can't be diverted via Quadro and that that, thus, is evidence that disability benefits were not meant to be diverted. Mr. Quigg  in his brief that Judge     made via Quadro. And he points out that Judge Hendrian ordered any transfer of benefits be made via Quadro. Mr. Quigg indicated that Judge Hendrian ordered any transfer of     that, thus, is evidence that Judge Hendrian ordered any transfer of benefits be made via Quadro.  Quigg indicated that Judge Hendrian ordered any transfer of benefits be made via Quadro. And he points out that Judge Hendrian ordered any transfer of   Quadro. Judge Hendrian intended that the payment of the benefits not be left to the defendant alone and that there be a mechanism, a tool by which they were simply taken to allow sort of an orderly transfer of those funds. And also the use of a Quadro which would necessarily contain a the Hunt formula would allow the parties down the road to be able to determine what part of any benefit the ex-wife was entitled to because, you know, the longer the husband works the less share she receives, which is what happened in this case. At this point in time she was only entitled to 37.6 percent of the benefits as opposed to 50. So did that help answer your question justice? Yes, thank you. Judge, there was a question about what case law Judge Coriel was relying upon. We believe it was Schertz, Marshall, Davis, and Belt. There was an indication by counsel that Judge Coriel stated during the hearing that the benefits are in the nature of a disability pension. You'll find that at page 34 of the record, Volume 3. We would suggest to the court that Judge Coriel simply misspoke there. I think if you look at the context of his words he meant to say the benefits are in the nature of a retirement pension, which is the theme of the Schertz case, the Marshall case, that when you choose disability benefits in lieu of retirement, those benefits then are the disability benefits you receive are in the nature of a retirement. If you are representing the spouse of a retired policeman, the plan is similar. Would you negotiate in a settlement plan for a share of disability benefits if those ever became available? I'm thinking of a situation where somebody is eligible to retire when they reach age 50. They're 49 and they announce it and they maybe even have a retirement party and they're injured on their next call and they receive disability benefits. The spouse or former spouse was expecting and the firefighter himself was expecting that a share of his pension benefits would be paid, but because of a fortuitous tragic accident, he or she is not  for retirement. If I was representing a spouse and the firefighter, the police officer, or whoever was younger and not yet eligible for retirement, I would know that if that person got injured and he decided to take disability benefits, that my client would then not receive any share of those disability benefits until, as Davis suggests, that police officer... Reach retirement age? Yes. What about if the person isn't yet chronologically eligible but has declared that they intend to retire at 50 and they receive disability benefits at 49 and a half and they receive them because they didn't reach retirement age? I'm trying to follow that question as close as I can. While I'm... Make sure that I... If a firefighter receives disability benefits before the age of retirement, before they actually could have retired, but they declared their intention to retire at age 50, at age 49 and a half, if they receive disability benefits, will the ex-spouse ever get any of those disability benefits? I believe if he is injured before he's eligible and gets those benefits, I think you're right, the ex-wife in this case would be excluded under the case law. I don't know if I'm right. I'm asking you if that was your point. I think she would be excluded so it would make sense to talk about that. In Marshall, for example, this court talked about the agreement between the parties that he was going to at least work for 20 years and be eligible for his pension. That may have played a role in Marshall, I'm not sure. But I want to answer your question. I think you have. So at the end of the day, Judge Corio was looking at paragraph 9. It awarded my client interest in the pension in the defendant's retirement plan. It's undeniable the plan is the fund. The fund has various components which include disability benefits. So we have disability benefits. If you follow the Schertz analysis and apply the facts to the case, they are he was eligible to retire at the time he was disabled and hurt, he chose to take disability benefits in lieu of retirement benefits, and under the case law, therefore, my client is entitled to receive a share of those disability benefits, and the share is what she would have otherwise received had there been normal retirement. That's why at the trial, the lawyers that were representing the parties at that point made the calculation that my client would receive 37.6 percent of the benefits as opposed to 50. And with respect to dollar amounts, this might be an aside, but what he's receiving in disability right now is exactly what he would be receiving had everything, had he not been injured and just retired in the normal course of events. So there's no need to remand to do any calculations if the court simply just affirms Judge Coriell we would be matching or we would be in compliance with the case law especially sure. Mr. Biggis, I want to go back to Justice Connacht's question because I'm not sure I understood your answer. Okay. My impression from reading the cases is if you were injured and disabled prior to retirement age, the ex-spouse is not entitled to any of that disability payment until the firefighter reaches retirement age and could elect to take a pension and at that time the spouse would be entitled to a benefit. But I did not hear your answer that way to Justice Connacht. I didn't understand the question in the way that you just put it to me now, Justice, and you're absolutely right. The Davis case is an example of that. In the Davis case, there was a disability that the worker, the husband took disability before he was eligible to retire. Davis held therefore she wasn't entitled to disability benefits until the husband was eligible to retire. Well, let me ask you a question. If it's tax-free, it's tax-free because it's disability. And in this instance, it's the same amount, except that it's more because it's tax-free, right? It's the same gross amount. Same gross. Yes, sir. Well, if the... I guess your answer is it's part of the retirement plan, but one could make the argument that it ought to be 37.5% of what would have been received under the pension benefit, which is taxable. Yes, the idea is that if you choose disability when you're eligible to retire, that my client in this case should be entitled to a share of those benefits as her entitlement to retirement benefits. And, of course, they would be taxable.  to her? Yes. That's my understanding, that when she receives her 37.6% of these disability benefits, that it is eligible to retirement benefits. It is in lieu of the retirement benefits, it would be considered retirement benefits to her. Because she's got the disabled party, so her portion would be taxed. That is correct. The idea is to put her in the position, if he elects to retire, or if he elects disability when he's eligible to retire, the law basically says, look, if you want to do that, that's fine. But your ex-wife is clearly entitled to what she was awarded back in 1999 in terms of retirement, and she's going to get that. And I believe the IRS would treat it as taxable. I see that my time is up unless the court has any further questions. Thank you, Mr. Bickus. Mr. Quick, any rebuttal? Again, this whole issue of disability   retirement benefits, again, I would suggest that there is a blurring of the lines between those two things. You know, if you look at the Shirts case, there was a vigorous dissent also that the dissent said, well, I would agree with the majority, but for the fact that as a matter of law, disability benefits are not divisible. They cannot be divided. And I'd also like to point out in reference to Judge Harrison's question about the quadro, yes, he specifically said said funds will be transferred by a quadro. Now, whether that was a nullity or not, I think that's a clear indication of what the Judge Hendreen was saying in 1999. He was talking only about retirement benefits. Retirement benefits. And to leap, to somehow transmute what he says into an all-encompassing umbrella of any and all benefits that might arise in the future, I just have to say that clearly was not what Judge Hendreen intended. So, somehow,  going to reach the conclusion that Mr. Bickus suggests, that she's entitled to a portion, then there has to be, we have to assume what Judge Hendreen was thinking, or else we have to just say retirement benefits and disability benefits are really one and the same. Mr. Quigg, this was a judgment entered by Judge Hendreen. It wasn't a marital settlement agreement, so the parties weren't stipulating to anything. Was the evidence, was there any evidence before Judge Hendreen any indication that the parties were parsing out potential disability benefits from retirement benefits? In other words, was he on notice that this was a potential issue? Well, the record's not clear, to be honest with you, but I would have to say probably not. And then going back to, I think it was Justice Connacht that was talking about what a reasonably prudent, he didn't use these words, but in counseling a client in settlement negotiations, what a reasonably prudent divorce practitioner counseled a client where the other spouse has retirement benefits, including retirement benefits and disability benefits, you have to have them in a marital settlement agreement mention of those disability benefits, and must a judge, if entering a judgment, have to specify what will happen to potential disability benefits if that should occur? Well, the answer, my answer would be yes. As a divorce attorney, especially given that this is a widely known issue now, I would think that I think it would certainly, I don't know if I'd call it malpractice, but I would certainly think that a prudent attorney knowing that all the other benefits that are out there for firemen or policemen, certainly I would think you'd want to include that in your marital settlement agreement. Sure, I would certainly look at this matter under advisement and be able to assess it.